Carl Wescott
PO Box 191906
San Francisco, CA 94119
*in propria persona*
+1 415 335 5000

FILED
LODGED
RECEIVED
MAIL

SEP 24 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                            DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### SEATTLE DIVISION

**19-CV-5898 RJB**

| | |
|---|---|
| Carl A. Wescott, | ) Case Number _____ |
| Plaintiff | ) |
| ------------------- versus ------------------- | ) **VERIFIED COMPLAINT FOR** |
| Jim Upshaw, | ) **BREACH OF CONTRACT; PROMISSORY** |
| Upshaw Performance Systems; Inc. | ) **FRAUD; CONVERSION;** |
| Chris Patterson, | ) **TORTIOUS INTERFERENCE WITH** |
| HPA Mortgage, LLC; | ) **BUSINESS EXPECTANCY; and** |
| Defendants | ) **BREACH OF THE COVENANT OF GOOD** |
| And DOES 1 to 25 | ) **FAITH AND FAIR DEALING** |
| | ) |
| | ) |
| | ) ACCOUNTING REQUESTED |
| | ) JURY TRIAL REQUESTED |

Plaintiff Carl A. Wescott, proceeding *pro se,* complains of Defendants Jim Upshaw, Upshaw Performance Systems Inc., and Chris Patterson and in support of his complaint, the Plaintiff states as follows:

---

**BREACH OF CONTRACT; PROMISSORY FRAUD; CONVERSION;
TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY and
BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;**

1

## PARTIES: PLAINTIFF and DEFENDANTS

1. The Plaintiff is an individual who resided in San Francisco, California for many years and is still in San Francisco.

2. The first Defendant, Jim Upshaw ("Upshaw"), is an individual presently living in Port Townsend, Washington.

3. The second Defendant, Upshaw Performance Systems Inc. ("UPSI"), is a Corporation in Port Townsend, Washington.

4. The third Defendant, Chris Patterson ("Patterson"), upon information and belief, also presently lives in Washington State. Her whereabouts are unknown but she is a friend of Jim Upshaw.

5. HPA Mortgage, LLC is a California LLC set up to manage the investors' funds.

## OTHER KEY PARTIES IN THE NARRATIVE

6. Edward Berr is a licensed real estate broker (license number 00995012 granted in 1988 and current) in the State of California who served as agent for Upshaw and Upshaw in multiple transactions and also served as agent for Patterson. As part of his duties as agent, Berr was Managing Member of HPA Mortgage, LLC. Further facts related to Berr's agency shall be pled below. Berr's license information is attached as Exhibit A. Edward Berr created HPA Mortgage, LLC and served as Managing Member of the LLC.

7. In addition, upon information and belief, there are more individual Defendants currently unknown to Plaintiff, which shall emerge with the benefit of legal discovery.

8. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, Upshaw and Patterson, as individuals, in addition to acting for himself and herself and on his and her own behalf individually, as well as for the benefit of their respective marital community (if any per individual case), are and were acting as the agents, servants, employees, and/or representatives of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all of the Defendants. Specifically, and without limitation, Plaintiff alleges on information and belief that the actions, failures to act, breaches, and misappropriations alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants.

9. In addition, upon information and belief, there are even more corporate, trust, and other entity type Defendants currently unknown to Plaintiff, which shall emerge with the benefit of legal discovery. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, UPSI, as a corporate entity, in addition to acting for itself and for its own behalf, was acting as the agent, servant, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants (entity and individual) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy. Plaintiff further alleges on information and belief that the acts of each of the Defendants were

fully ratified by each and all of the Defendants. Specifically, and without limitation, Plaintiff alleges on information and belief that the actions, failures to act, breaches, and misappropriations alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of and in conspiracy with each and all of the other Defendants.

## JURISDICTION

10. This Court has jurisdiction pursuant to 28 § USC 1332, there being diversity of citizenship and the amount in controversy exceeding $75,000 exclusive of fees and costs.

## VENUE

11. Venue is proper in this Court because the majority of defendants are domiciled in this district, there also being diversity of citizenship 28 § USC 1332 the amount in controversy exceeding $75,000 exclusive of fees and costs.

A. Background and The Parties' Contract

12. In 2006 the Plaintiff was a successful international real estate developer having recently sold out multiple phases of a residential development in Vilcabamba, Ecuador. The Plaintiff realized that Central and South American venues were increasingly attractive to American expatriates because of the relatively low cost of living and the climate and scenic beauty. The Plaintiff's business model was to identify promising parcels and do the preliminary work of development, hiring architects, making initial infrastructural

improvements, obtaining permits, and marketing the development concept. With the permits the value of properly obtained land could go up 1000 to 2000% or more. The Plaintiff could then borrow against the improved value of the land to fund infrastructure improvements and sell lots (and sometimes houses, too) through marketing channels at a substantial profit.

13. This case is related to a contract to develop property elsewhere in Ecuador, on the beach north of Bahia de Caraquez. The Defendants were among parties that pledged to invest $675,000 as syndicated mortgage debt sold through a securities offering in the United States, but collateralized and secured with a first mortgage (hipoteca) in Ecuador.

14. As it turns out, the Defendants, via their agent Berr, short-changed the Plaintiff by a six-digit amount, by converting a 6-digit amount received from investors at the closing without sponsor approval. Principals are liable for the tortious acts of their agent.

15. The wrongful conversion led to the sponsor's inability to develop the property as promised to investors in the related Private Placement Memorandum.

16. The Plaintiff is drafting another Complaint handling that issue, which is separate as it involves a different set of defendants, will be in a different set of venues, and will consist of a different set of causes of actions.

17. In the related securities offering for Hacienda Palo Alto ("HPA"), the main beach property to be developed was valued at over US $15,000,000 (Exhibit B: appraisal). The Plaintiff will provide the PPM (Private Placement Memorandum) to the Court shortly, and to the Defendants and to their attorneys via Court processes. Of course, all

BREACH OF CONTRACT; PROMISSORY FRAUD; CONVERSION;   5
TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY and
BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;

Defendants received said PPM prior to their making the investments, were qualified as accredited investors, and signed subscription agreements.

18. An additional property ("THE PROPERTY") was cross-collateralized for extra security to the Defendants.

19. Edward Berr served as an agent placing mortgage debt in the syndicated mortgage for multiple investors including Upshaw, UPSI and Patterson, and was paid 5% of each syndicated mortgage tranche, with each investor providing between $25,000 and $100,000. There are twenty-one other investors that invested in this transaction via their agent Edward Berr but the Plaintiff does not have the contact information for those investors. The Plaintiff plans to add further Defendants to this complaint but will need to elicit information in the discovery process for some of the further Defendants.

20. As agent, Edward Berr had broad authority to make decisions on behalf of all of his investors that paid him to serve as agent. As one example, despite having none of his capital invested in the deal, Edward Berr served as Managing Member of HPA Mortgage, LLC, which managed the investors' money.

21. The current mortgage debt per Defendants' accounting is over US $3,000,000.00, which was cross-collateralized against two properties as per the PPM. The US $3 million+ as claimed by Defendants via their agent Berr is the original $675,000 invested, not subtracting the monies they stole, and then adding compounded interest. The first of the two cross-collateralized properties was worth US $15.1 million as per the appraisal; that was Hacienda Palo Alto itself, the main property to be developed, with 1.1 kilometers of beach. The second of the two cross-collateralized properties (both secured with the same mortgage tied together with an identical mortgage secured

**BREACH OF CONTRACT; PROMISSORY FRAUD; CONVERSION;**  6
**TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY and**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;**

against the other property) was then-recently-purchased for US $141,800, and thus was worth US $141,800 by definition, at the time. The second property was relatively near the first (both within 30 minutes of Bahia del Caraquez, Ecuador).

22. Due to many factors, including the securities fraud alluded to above, Plaintiff was unable to develop the main property, as he did not get the promised capital from the offering needed to put in the infrastructure needed to sell lots. Over US $200,000 of the offering went to pay off the previous private mortgage (Edward Berr's company), and thus when part of the remainder was converted, it was not possible to fund the needed infrastructure that lot buyers expect – water and electricity with simple cut roads.

23. Since then, there was a 7.8 magnitude earthquake on the coast, centered in Canoa, which is about 15 miles south of the main subject property. The earthquake destroyed the simple houses on the property and the simple cuts roads and depressed the real estate market in the region, which had been driven largely by the influx of people from other countries.

24. What had begun as a migration of mostly older North Americans at or nearing retirement transformed in to an interesting, diverse sea of younger people from all over the world seeking more freedom and adventure and better lifestyles. Ecuador under Rafael Correa was for years the country with the fastest-growing infrastructure per capita, with subsidized energy, an incredibly competitive domestic air travel market with three foreign airlines competing for business across a network of dozens of newer airports, 5600 kilometers of newer four-lane highways along the coasts, connecting the main cities with the beaches, and newer ports and railroads. The four areas of Ecuador

BREACH OF CONTRACT; PROMISSORY FRAUD; CONVERSION;
TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY and
BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;                      7

– from east to west the Amazon/jungle, the mountains, the coast, and the Galapagos Islands provided a diverse set of outdoor playing fields and activities, and the quickly rising GDP and emerging middle class created many entrepreneurial opportunities for Ecuadorians and foreign cedula holders alike.

25. Unfortunately, with the path of destruction wrought by the April 2016 7.8 magnitude earthquake, including roads for miles from the property being impassable, and the resulting cataclysmic drop in real estate prices, the development of the main property, which had been subdivided in to 153 lots, is no longer economically feasible for the sort of residential units envisioned.

26. Despite those challenges, Plaintiff has done his best to repay the investors part of their invested capital.

27. Specifically, the Plaintiff saw opportunity in the second property that was cross-collateralized in the offering. It had been purchased by Plaintiff on behalf of an Ecuadorian corporate entity (a Sociedad Anonima) for US $141,800, and was also near Bahia de Caraquez, Ecuador, and HPA to the north. It had been massively (figuratively) "underwater" as the mortgage on it also had the same value of over US $3,000,000. In other words, there was no equity whatsoever in that property, as the debt-to-value ratio was over 20-to-1.

28. Recently, to return some money to investors and to begin to untangle the mess, Plaintiff entered in to an agreement to sell that property to an Ecuadorian entity (hereafter "PROPERTY BUYER").

29. With this deal, the investors were due to receive approximately US $130,000 of their US $675,000 investment back

BREACH OF CONTRACT; PROMISSORY FRAUD; CONVERSION;
TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY and
BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;

8

30. Edward Berr ("BERR"), who acted as agent for the Defendants in placing their money, signed the contract as agent for investors governing the sale of the second cross-collateralized property on or around September 7th, 2017.

> "BERR, serving as agent/broker, has confirmed acceptance of these terms with all his investors who have an interest in this mortgage"

31. An unsigned version of that contract is attached as Exhibit C, and is believed to be the same as the final version that Mr. Berr signed. The Plaintiff will locate the signed original and file with the Court shortly.

32. In that contract, Edward Berr continued his duties as agent and further affirmed that relationship. The PROPERTY BUYER agreed to pay US $130,000.00 to the Defendants in thirteen (13) monthly payments from 9/12/2017 to 9/12/2018.

33. The Defendants agreed to remove and reconvey the mortgage within 30 days of receiving the payments. They would still have the US $3,000,000 mortgage on the main Hacienda Palo Alto property with 153 lots and 1.1 km of beach as further security after receiving the US $130,000.00.

34. As one of those duties as agent, Berr promised to reconvey the mortgage at investors' expense within 30 days of all payments being received. Berr also promised (on behalf of investors) to pay a penalty of $125,357.18 should he not reconvey the mortgage within 30 days.

35. All thirteen payments were made. Defendants confirmed receiving each payment in writing and that they had been paid in full as of 9/12/2018.

36. However, Berr, on behalf of Defendants, did not reconvey the mortgage and has not to this day.

**BREACH OF CONTRACT; PROMISSORY FRAUD; CONVERSION; TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY and BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;**

37. Rather than honor the signed contract, Edward Berr, on behalf of Defendants, then insisted that Plaintiff sign over properties he does not own. Berr, in an ongoing act of attempted extortion, made it clear that he would take no action (neither reconveyance nor the payment specified in the contract) until Plaintiff signed over two valuable properties he and his investors had and have no right to (Exhibit D).

38. This generated further potential primary liability of over $3,000,000 as the Plaintiff now has an obligation to the PROPERTY BUYER who is threatening to sue Plaintiff in Ecuador.

39. In the contract attached, Berr also promised to distribute monies received to his investors. Plaintiff was surprised to learn in a conversation with Jim Upshaw that Berr has not distributed any of these monies to the Plaintiffs, and hence seeks the Accounting on behalf of himself and investors.

### Count I – Breach of Contract

40. The Plaintiff realleges paragraphs 1-39 as if fully set out herein.

41. At all times, BERR was the Defendants' agent by virtue of his contractual authority and by reason of authority impliedly conferred by the Defendants.

42. BERR was the Defendants' agent, they were liable for the acts of BERR. See CACI 3701 and cases cited therein; principals are liable for wrongful conduct of agents, even if the conduct is criminal.

43. The Plaintiff was damaged by the Defendants' breach directly, by proximate loss of use of the PENALTY and then consequentially by the further liability to PROPERTY BUYER and then further for consequential damages.

BREACH OF CONTRACT; PROMISSORY FRAUD; CONVERSION;     10
TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY and
BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;

## Count II – Promissory Fraud

44. The Plaintiff realleges paragraphs 1-39 as if fully set out herein.

45. BERR's promise to rescind the mortgage and pay the PENALTY if late, made as the Defendants' agent, was false when made.

46. BERR's Promise was made as part of a scheme to induce the Plaintiff's reliance so that he could access and convert the $130,000 of funds on the strength of the Plaintiff's sale to PROPERTY BUYER.

47. BERR intended the Plaintiff to reasonably rely on BERR's Promise.

48. The Plaintiff did in fact reasonably rely on BERR's Promise.

49. The Plaintiff was damaged by the Defendants' breach directly, by proximate loss of use of the PENALTY and then consequentially by the further liability to PROPERTY BUYER and then further for consequential damages.

50. The Plaintiff was damaged by his reliance on BERR's and the Defendants' Promise and fraudulent scheme directly, by proximate loss of use of the and by the further liability to PROPERTY BUYER and then further for consequential damages.

## Count III - Conversion

51. The Plaintiff realleges paragraphs 1-39 as if fully set out herein.

52. As of October 12th, 2018, the Plaintiff possessed an unambiguous right to possess the PENALTY.

BREACH OF CONTRACT; PROMISSORY FRAUD; CONVERSION;   11
TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY and
BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;

53. The Defendants, through their agent BERR, intentionally interfered with the Plaintiff's right of possession by diverting and then wrongfully retaining the PENALTY.

54. The Plaintiff did not consent to the Defendants' wrongful retention of the PENALTY.

55. The Plaintiff was harmed as a result of the Defendants' retention of the PENALTY directly, by proximate loss of use of the PENALTY and then by the further liability to PROPERTY BUYER and then consequentially for further damages related to other monies that Plaintiff could have earned had he possessed the PENALTY.

56. The Plaintiff also sustained severe emotional distress as a result of his loss of the PENALTY, due to his inability to perform on significant revenue opportunities that required some capital.

57. The Defendants' conduct was a substantial factor in bringing about the Plaintiff's harm and emotional distress.

### Count IV Tortious Interference with Business Expectancy

58. The Plaintiff realleges paragraphs 1-39 as if fully set out herein.

59. At all relevant times, the Plaintiff was in a web of advantageous economic relationships with other parties possessing other valuable opportunities ("the Relationships") that would have conferred substantial benefits on the Plaintiff. Plaintiff. Had the Defendants rescinded and removed the mortgage, the Plaintiff could have satisfied his obligation to the PROPERTY BUYER as well as part of his obligation to Defendants that would have led to the consummation of further profitable transactions as a result of the Relationship. Given that the Plaintiff was unable to perform his commitment to the

BREACH OF CONTRACT; PROMISSORY FRAUD; CONVERSION;
TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY and
BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;

12

PROPERTY BUYER, the Relationships and other related relationships were proximately and foreseeably disrupted.

60. The Defendants were aware of the Relationships both generally and specifically. Indeed, the Defendants' awareness of the Relationships and their value to the Plaintiff is what led them to extortionately demand the transfer of properties entirely unrelated to the parties' dealing and to which they would have had no contractual or equitable rights.

61. By retaining the PENALTY through their agent, and not rescinding and removing the mortgage, the Defendants substantially interfered with and disrupted the opportunities related to those Relationships.

62. The Defendants' knew, at least through their agent BERR, that their actions in retaining the PENALTY and not removing and rescinding the mortgage would, with substantial certainty, disrupt the Relationships.

63. The Plaintiff was harmed by the Defendants' acts of interference with the Relationships by proximate loss of use of the PENALTY and by the further liability to PROPERTY BUYER and then further for consequential damages <u>including, but not limited to, the loss of further opportunities</u>.

## Count V– Breach of the Covenant of Good Faith & Fair Dealing

64. The Plaintiff realleges paragraphs 1-32 as if fully set out herein.

65. The Plaintiff performed all conditions required of him by the contract.

66. Defendant interfered with the Plaintiff's right to receive the benefits of the contract.

67. Plaintiff has been damaged by the Defendants' breaches of contract by proximate loss of use of the PENALTY and by the further liability to PROPERTY BUYER and then further for secondary and consequential damages.

## Count VI Accounting

68. Plaintiff reallges paragraphs 1-39 as if fully set out herein.

69. Plaintiff, is entitled to an accounting of all funds withheld and/or misspent by the Defendants.

70. Plaintiff is also entitled to an accounting of all profits obtained by the Defendants as a result of their misappropriation of the PENALTY.

71. If applicable, the Plaintiff should be compensated with those profits.

72. On behalf of investors, Plaintiff also seeks an accounting of all amounts that were supposed to go to investors that were converted by Berr and/or related parties.

[rest of this page blank; Prayer for Relief follows on the next page]

WHEREFORE, Plaintiff prays

a.  As to Count I, for an award of damages in an amount sufficient to compensate the Plaintiff for all direct and consequential damages caused by the Defendants' breach of contract.

b.  As to Count II, for an award of damages in an amount sufficient to compensate the Plaintiff for all direct and consequential damages caused by the Defendants' fraudulent promises and for the imposition of exemplary damages in an amount sufficient to punish and deter the Defendants from making false and fraudulent promises in the future.

c.  As to Count III, for an award of damages equal to the market value of the PENALTY; all amounts expended by the Plaintiff in attempting to regain the PENALTY, and consequential damages resulting from the loss of the use of the PENALTY, plus sufficient damages to compensate the Plaintiff for the emotional distress experienced by the Plaintiff as a result of the Defendants' conversion, including future therapy expenses; and exemplary damages in an amount sufficient to punish and deter the Defendants' from converting property in the future.

d.  As to Count IV, for an award of damages sufficient to compensate the Plaintiff for all direct and consequential damages caused by the Defendants' intentional interference with the Plaintiff's Economic Relations as well as the imposition of exemplary damages in amount sufficient to punish and deter the Defendants from committing similar acts of interference in the future.

e.  As to Count V, all damages proximately caused by the Defendant's breach of the Covenant of Good Faith and Fair Dealing, including consequential damages plus exemplary damages in an amount sufficient to punish and deter the Defendants from committing future breaches.

BREACH OF CONTRACT; PROMISSORY FRAUD; CONVERSION;
TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY and
BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;

15

f.  As for Count VI for an accounting as to all amounts wrongfully withheld from the Plaintiff, and further for an accounting of all monies owed by Berr or his entity to each and every one of his investors in HPA;

g.  For such other and further relief as the Court deems just.

RESPECTFULLY SUBMITTED on September 23rd, 2019

CARL A. WESCOTT, *pro se*

BREACH OF CONTRACT; PROMISSORY FRAUD; CONVERSION;
TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY and
BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;

16

Carl Wescott
PO Box 191906
San Francisco, CA 94119
*in propria persona*
+1 415 335 5000

FILED ___ LODGED ___ RECEIVED ___ MAIL

SEP 24 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ___ DEPUTY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# SEATTLE DIVISION

| | |
|---|---|
| Carl A. Wescott, ) | Case Number _____ |
| Plaintiff ) | |
| ------------------- versus ------------------- ) | **VERIFICATION OF COMPLAINT** |
| Jim Upshaw, ) | |
| Upshaw Performance Systems; Inc. ) | |
| Chris Patterson, ) | |
| HPA Mortgage, LLC; ) | |
| Defendants ) | |
| And DOES 1 to 25 ) | |

I, Carl A. Wescott (Plaintiff, *pro se*), declare:

1. I verify that the allegations herein (in the attached 16 page legal complaint) are true and correct to the best of my knowledge, information, and belief.

2. I declare under penalty of perjury that the foregoing (in same) is true and correct.

Executed in Scottsdale, AZ on September 23rd, 2019.

Respectfully submitted,

*/s/ C.A. Wescott*

Carl A. Wescott
Telephone: (415) 335-5000

**VERIFICATION OF COMPLAINT**                                  1